## Schull v. Commonwealth.

May 17, 1949.

E. J. Picklesimer and Abner May for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

Appellant, Charles B. Schull, was indicted at the September term of the Pike Circuit Court for the wilful murder of Hubert Lee Kipfinger. On a trial under this indictment he was convicted of voluntary manslaughter and his punishment fixed at confinement in the state penitentiary for a period of two years. He prosecutes this appeal from a judgment based upon that verdict.

The only ground relied on for reversal by appellant is that the verdict of the jury is flagrantly against the evidence and was given as a result of passion and prejudice. A determination of that question will therefore necessitate some examination of the evidence.

The deceased and appellant both lived on Slaters Branch on the Tug River side of Pike County and their homes were practically opposite each other on either side of a narrow truck road about 10 or 12 feet wide. Appellant is a man 76 years of age, weighs about 120 pounds, is about 6 feet tall and has always borne a good reputation in his community. The deceased was a strong man weighing over 200 pounds and was about 50 years of age. There had been no trouble between them prior to this day.

Three witnesses testified for the Commonwealth. According to the testimony of deceased's wife he was killed on Saturday afternoon, July 3, 1948, about 7:00 o'clock p. m. in front of his home and fell at his steps just inside the gate in his yard. She heard two shots from a rifle just as she came out onto the porch but could give few details of the shooting although she said her husband was unarmed and had nothing in his hands when he fell at the steps. She did testify that she heard her husband tell appellant not to kill him or something like that.

Squire Blackburn, a Justice of the Peace, testified that he arrived shortly after the shooting occurred and found deceased at the foot of the steps of his porch lying in his blood and already dead. He had a bullet wound through his left arm and a wound in his left chest. He went to the home of appellant across the road and found him on his back porch. When he asked appellant if he had shot deceased he said he didn't know it if he had, but at his demand appellant produced a 22 rifle and turned it over to the witness. Appellant was arrested and on being questioned by Squire Blackburn admitted firing two shots with the rifle. One of these he claimed was an accidental discharge resulting from the efforts of his wife and daughter to hold him and get the rifle away from him. He admitted the other shot was made at deceased who he says was advancing on him with two lumps of coal when he shot him. Witness said he

saw two men, Clyde Welsh and Clay Bowling, at the Kipfinger home. Both of them were under the influence of liquor but he did not smell any liquor on Kipfinger's breath and didn't know whether he had been drinking. He testified that appellant has a good reputation.

Jack Runyon who lives in the same general neighborhood on Slaters Branch testified that he was on the road about 100 feet from the scene of the shooting when it occurred; that Kipfinger was standing in the road near his own gate and appellant was in the road near his gate; that he only heard one shot fired and that he did not see anything in Kipfinger's hands at the time he was shot.

Appellant's version of the killing in his own language is substantially as follows: 'I am 76 years old and weigh 119 pounds. On the day of the shooting Kipfinger—I call him 'Kippy'—was coming up the road between our houses when he said to me 'What made you call the Law?' I said 'Kippy, I have stood about all I can and there is just one drunk after another and parties at your house and I can't stand it any more and thought I would call the Law.' With that he reached down and grabbed up two lumps of coal and said 'G— d— you. I will crush you into the road.' I said, 'I don't want to hurt you. We have been good friends,' and I made a dive for my gun and he kept coming toward the gate. I got hold of my gun and my wife and daughter got hold of me and the gun went off and I was scared and mad too and worked up and I reloaded the gun and set down on my steps. Mrs. Kipfinger was standing in the yard and she says, 'Hubert, go back over and get that old gray-haired son of a b— and stomp his guts out and throw h'm in the branch,' and he come like a big mule and looked dangerous and I was scared of him. He just kept coming on and I says, 'Kippy, don't come any further. I am going to hurt you if you do. You are too big a man for me,' and he reached down and got the coal off of my pile and he was within about three feet of me, about one step from my yard gate and kept coming and I pulled the trigger.''

Mr. and Mrs. Harry Lyons who were sitting on the porch of their son-in-law some 75 or 80 yards from the scene of the shooting testified in substance that they

saw Kipfinger come up the road and heard him and the appellant talking to each other but could not understand much of the conversation but that they seemed to be fussing about something; that appellant was in his own yard and the deceased was out in the road about 3 feet from appellant's front gate; that they saw Kipfinger pick up something which they thought was a brick or coal but that he dropped it and went back over toward his own house and then came back within a few minutes. They heard two shots fired and saw the deceased grab himself and holler, go back toward his house and fall as he went toward his porch.

On rebuttal the wife of the deceased denied she used the language attributed to her by appellant.

This is the substance of the evidence. The testimony for the Commonwealth established the killing and the testimony for the defendant sought to establish that he acted in self defense. Where the accused admits or is shown by the evidence to have committed a homicide and seeks to justify it on the ground of self defense, it is incumbent on him to satisfy the jury that the killing was excusable and the defense must be convincingly established. The jury were not bound to accept his testimony that he acted in self defense and it is evident that they did not believe his testimony and concluded that the killing was unnecessary. We cannot say that the evidence was not sufficient to support the verdict or that it was given as a result of passion and prejudice. The jury, no doubt out of sympathy for his age, gave appellant the minimum punishment fixed by law for the offense and we do not feel that we are justified in reversing it under the evidence.

Wherefore the judgment is affirmed.